## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GENEVA FOREIGN & SPORTS, INC., individually and on behalf of all others similarly situated, <br><br> *Plaintiff,* <br><br> *v.* <br><br> ERIE INSURANCE COMPANY OF NEW YORK; ERIE INSURANCE COMPANY; and ERIE INDEMNITY COMPANY d/b/a Erie Insurance Exchange, <br><br> *Defendants.* | Case No.   1:20-cv-93 |

## COMPLAINT- CLASS ACTION AND DEMAND FOR JURY TRIAL

Plaintiff Geneva Foreign & Sports, Inc. ("Plaintiff" or "GFS"), brings this Class Action Complaint and Demand for Jury Trial against Defendants Erie Company of New York, Erie Insurance Company, and Erie Indemnity Company d/b/a Erie Insurance Exchange (together "Defendant" or "Erie Insurance") for wrongfully denying its claims for Business Income and Extra Expense coverage resulting from losses sustained due to the ongoing COVID-19 pandemic. Plaintiff alleges as follows upon personal knowledge as to itself and its own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by its attorneys:

## NATURE OF THE ACTION

1.      Plaintiff GFS has operated a car service and sales centers in the upstate New York area for over 40 years. It is now struggling to survive as the COVID-19 global pandemic and recent executive orders issued by the Governor of the State of New York (the "Closure Orders,"

defined below)[1] have brought its business to a standstill.

2.      To protect its business in situations like these, Plaintiff obtained business interruption insurance from Defendant, as set forth in Erie's Ultraflex Commercial Property Coverage Part – New York, Form No. FX-00-02 (Ed. 5/20) UF-3554 (the "Ultraflex Property Coverage Form"). The Ultraflex Property Coverage Form provides, *inter alia*, "Income Protection" coverage, "Extra Expense" coverage, and "Civil Authority" coverage.

3.      However, in blatant breach of the insurance obligations that Defendant voluntarily undertook in exchange for Plaintiff's premium payments, Defendant issued a blanket denial to Plaintiff's claim for Business Income losses or other covered expenses related to COVID-19 or the Closure Orders, without first conducting a meaningful coverage investigation.

4.      As a result of Defendant's wrongful denial of coverage, Plaintiff brings this action, on behalf of itself and all those similarly situated, for declaratory judgement establishing that the COVID-19 pandemic has caused physical property loss and damage to property and triggers coverage under the Ultraflex Property Coverage Form; for breach of Defendant's contractual obligation under the Ultraflex Property Coverage Form to indemnify Plaintiff and others similarly situated for Business Income losses and Extra Expenses; and for violations of New York's General Business Law (GBL) § 349 *et seq.*

**PARTIES**

5.      Plaintiff Geneva Foreign & Sports, Inc., is a corporation incorporated and existing under the laws of the State of New York with its principal place of business located at 2787 State Route 14, Geneva, New York 14456.

---

[1] *See* NY Executive Order No. 202.8 (March 20, 2020), & NY Executive Order 202.14 (April 7, 2020) (hereinafter, the "Closure Orders"). The Closure Orders are attached as Exhibits A & B.

6.     Defendant Erie Indemnity Company d/b/a Erie Insurance Exchange is a corporation incorporated and existing under the laws of the State of Pennsylvania with its principal place of business at 100 Erie Insurance Place, Erie, Pennsylvania 16530. Defendant Erie Indemnity Company manages Erie Insurance Exchange, a reciprocal insurance exchange, and engages in the business of selling insurance contracts to commercial entities through its wholly-owned subsidiaries Erie Insurance Company and Erie Insurance Company of New York. These entities (referred to collectively herein as "Defendant") conduct business throughout this District, the State of Pennsylvania, and the United States.

7.     Defendant Erie Insurance Company is an insurance business corporation incorporated and existing under the laws of the State of Pennsylvania with its principal place of business at 100 Erie Insurance Place, Erie, Pennsylvania 16530. Defendant Erie Insurance Company is licensed to sell insurance in the State of New York.

8.     Defendant Erie Insurance Company of New York is a corporation incorporated and existing under the laws of the State of New York with its principal place of business at 120 Corporate Woods, Suite 150, Rochester, New York 14623. Defendant Erie Insurance Company of New York is licensed to sell insurance in the State of New York.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because there is complete diversity between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10.     This Court also has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) because (i) at least one member of the Class is a citizen of a different state than any Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (iii) none

of the exceptions under that section apply.

11.     This Court has personal jurisdiction over Defendant because it is headquartered in Pennsylvania. At all relevant times, Defendant has submitted to jurisdiction in this state by: (a) transacting business in Pennsylvania; (b) contracting to insure persons, properties, or risks located within Pennsylvania at the time of contracting; and (c) making contracts substantially connected with Pennsylvania.

12.     This Court has jurisdiction to grant declaratory relief under 28 U.S.C. § 2201 because an actual controversy exists between the parties as to their respective rights and obligations under the Policy with respect to the loss of Business Income and Extra Expense arising from the events detailed herein.

13.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred in Erie, Pennsylvania and within the Western District of Pennsylvania.

## FACTUAL BACKGROUND

### I.     The Erie Insurance All-Risk Policy.

14.     In exchange for a substantial premium, Defendant issued to GFS Policy No. Q42 6450094 NY for the policy period between June 14, 2020 to June 14, 2021. The policy is attached as Exhibit C (hereinafter, the "Policy").

15.     The Policy contains the Ultraflex Property Coverage Form, which include several additional coverages, including "Income Protection," "Extra Expense," and "Civil Authority," coverages.

16.     The Policy was issued to Plaintiff and covers its premises located at the address listed above.

17.     Plaintiff has performed all of its obligations under the Policy, including the payment of premiums.

18.     The Policy is an "all-risk" policy, meaning that it covers all risk of loss unless the risk is expressly and specifically excluded. (*See* Ultraflex Property Coverage Form, Section II.)

19.     Under the Ultraflex Property Coverage Form, Defendant agreed to "pay the actual loss of 'income'" (*See* Ultraflex Property Coverage Form, Section I – Coverages, Additional Income Protection – Coverage 3 § D) sustained by Plaintiff "due to partial or total 'interruption of business' resulting directly from 'loss' or damage to property" at Plaintiff's premises. (*See id.*, Section I – Coverages, Additional Income Protection – Coverage 3 § A, hereinafter "Business Income" coverage.) "Interruption of business" under the Income Protection coverage means "the period of time that your business is partially or totally suspended." (*See id.*, Section XI – Definitions.) "Loss" means "direct and accidental loss of or damage to covered property." (*Id.*) "Income" is defined in relevant part as "the sum of net income (net profit or loss before income taxes) that would have been earned or incurred and necessary continuing operating expenses incurred by the business such as payroll expenses, taxes, interests, and rents." (*Id.*)

20.     Under the Ultraflex Property Coverage Form, Defendant also promised to "pay necessary actual and necessary 'extra expenses' sustained by [Plaintiff] to (1) [a]void or minimize the 'interruption of business' and to continue your business operations… [and] (2) minimize the 'interruption of business' if you cannot continue your business operations to the extent it reduces the amount of loss that would have been payable under loss of 'income' and/or 'rental income.'" (*See id.*, Section I – Coverages, Additional Income Protection – Coverage 3 § B, hereinafter "Extra Expense" coverage.)  "Extra expense" means "necessary expenses you incur due to partial or total 'interruption of business' resulting directly from 'loss' or damage to

property" on Plaintiff's premises. (*Id.*)

21.     Under the Ultraflex Property Coverage Form, Defendant also promised to pay for "the actual loss of 'income'… and necessary 'extra expense' caused by action of civil authority that prohibits access to" the insured premises. (*See id.*, Section I – Coverages, Additional Income Protection – Coverage 3 § C.1, hereinafter "Civil Authority" coverage.) This Civil Authority coverage is triggered when a non-excluded risk "causes damage to property other than property at the [insured premises]" and both of the following apply: "(a) [a]ccess to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the [insured premises] are within that area but are not more than one mile from the damaged property; and (b) [t]he action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the peril insured against that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property." (*Id.*)

22.     The Ultraflex Property Coverage Form also contains specific exclusions, but it does not exclude losses from viruses or pandemics. (*See id.*, Section III – Exclusions.)

23.     Damage caused by COVID-19 and the related Closure Orders triggered the Business Income, Extra Expense, and Civil Authority coverages provided by the Ultraflex Property Coverage Form.

## II.     The COVID-19 Pandemic.

24.     For years, if not decades, the Center for Disease Control and Prevention ("CDC") along with the World Health Organization ("WHO") have been warning about the possibility of an airborne virus that could cause a worldwide pandemic.

25.     COVID-19 is a highly contagious airborne virus that has rapidly spread and

continues to spread across Illinois and the United States.

26.     COVID-19 is a physical substance and an organic human pathogen that travels through respiratory droplets. The virus physically transforms the air exposed to it and attaches itself to surfaces and structures.

27.     The COVID-19 virus spreads primarily by "fomite"—meaning objects, materials, or surfaces that have been physically contaminated or infected by respiratory droplets—and can survive on surfaces for extended periods of time. Recent information on the CDC's website provides that COVID-19 spreads when people are within six feet of each other or when a person comes in contact with a surface or object that has the virus on it.[2]

28.     According to a scientific study in The New England Journal of Medicine, the coronavirus responsible for the COVID-19 disease—SARS-CoV-2—can physically infect and survive on surfaces for up to 72 hours.[3]

29.     Another scientific study documented in the Journal of Hospital Infection found that human coronaviruses, such as COVID-19, can remain infectious on inanimate surfaces at room temperature for up to nine days.[4]

---

[2] *How COVID-19 Spreads*, Ctr. for Disease Control and Prevention (April 13, 2020), https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html

[3] Neeltje van Doremalen, Ph.D., et al., *Aerosol and Surface Stability of SARS-CoV-2 as Compared with SARS-CoV-1*, The New England Journal of Medicine (April 16, 2020), available at https://www.nejm.org/doi/pdf/10.1056/NEJMc2004973?articleTools=true.

[4] *See* G. Kampf, et al. *Persistence of coronavirus on inanimate surfaces and their inactivation with biocidal agents* (February 06, 2020), available at https://www.journalofhospital infection.com/action/showPdf?pii=S0195-6701%2820%2930046-3

30.     New York has been called the "epicenter" of the global COVID-19 outbreak.[5] To date, hundreds of thousands of people in New York have been diagnosed with COVID-19, and it is likely that hundreds of thousands (if not millions) more have been infected by COVID-19 but have not been diagnosed. While in some cases asymptomatic, COVID-19 is also known to cause severe and sometimes fatal respiratory failure. This, in addition to the highly contagious nature of COVID-19, renders any property exposed to the contagion unsafe and dangerous.

31.     On March 11, 2020, the WHO declared that the emerging threat of COVID-19 constituted a global pandemic.[6]

32.     While some rogue media outlets have downplayed the danger and impact of the COVID-19 pandemic, the scientific community and those personally and professionally affected by the virus recognize COVID-19 as a cause of real physical loss and damage. Recently, the Pennsylvania Supreme Court found that the COVID-19 pandemic constitutes a "natural disaster," namely because, like other identified natural disasters, it involves "substantial damage to property, hardship, suffering or possible loss of life." *Friends of DeVito v. Wolf*, No. 68 MM 2020, 2020 WL 1847100, at 10 (Pa. Apr. 13, 2020).

**III.    The Closure Orders and Other Action by Governmental Authorities.**

33.     The State of New York confirmed its first case of COVID-19 on March 1, 2020.[7]

---

[5] Jesse McKinley, *New York City Region is Now an Epicenter of the Coronavirus Pandemic*, N.Y. TIMES, (March 22, 2020), available at https://www.nytimes.com/2020/03/22/ nyregion/Coronavirus-new-York-epicenter.html.

[6] *See WHO Director-General's opening remarks at the media briefing on COVID-19*, World Health Organization (March 11, 2020), available at https://www.who.int/dg/speeches/detail/who-director-general-s-opening-remarks-at-the-media-briefing-on-covid-19---11-march-2020.

[7] Melanie Grayce West, *First Case of Coronavirus Confirmed in New York State*, WALL ST. J., (March 1, 2020), available at https://www.wsj.com/articles/first-case-of-coronavirus-confirmed-in-new-york-state-11583111692

34.     On March 7, 2020, Governor Andrew Cuomo declared a state of emergency after 89 cases had been confirmed in the state.[8]

35.      In response to the growing COVID-19 pandemic, Governor Cuomo has issued multiple executive orders pursuant to the authority vested in him by the New York Constitution and the laws of New York.

36.     On March 12, Governor Cuomo announced restrictions on mass gatherings, citing the authority vested in him by N.Y. Executive Law § 29-a(2)(b) "to issue any directive during a disaster emergency necessary to cope with the disaster."[9]

37.     On March 20, Governor Cuomo, again citing the authority vested in him by N.Y. Executive Law § 29-a(2)(b), issued the "New York State on Pause" Executive Order, which directed that all non-essential businesses statewide must close in-office personnel functions through April 19, 2020.[10] On April 7, Governor Cuomo extended his March 20th Closure Order until May 7, 2020.[11] A few days prior, he likened the rapid spread of cases to "a fire spreading."[12]

38.     The Governor's Closure Orders were in direct response to the spread and physical

---

[8] N.Y. Executive Order No. 202 (March 7, 2020), available at https://www.governor.ny.gov/news/no-202-declaring-disaster-emergency-state-new-york.

[9] N.Y. Executive Order No. 202.1 (March 12, 2020), available at https://www.governor.ny.gov/news/no-2021-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency.

[10] *See* Exhibit A, N.Y. Executive Order No. 202.8 (March 20, 2020).

[11] *See* Exhibit B, N.Y. Executive Order No. 202.14 (April 7, 2020).

[12] *Coronavirus Hot Spots Emerging Near New York City*, N.Y. TIMES (April 5, 2020), available at https://www.nytimes.com/2020/04/04/nyregion/coronavirus-new-york-update.html#link-696ea085.

presence of COVID-19 on persons and property throughout the State of New York.

39.    The Governor of the State of New York is a civil authority as contemplated by the Policy.

40.    At the time the Closure Orders were issued, civil authorities had confirmed that properties and premises throughout New York contained COVID-19 particles on surfaces and items of property. All sixty-two counties in the State of New York had declared states of emergency by March 16, 2020. That same day, Mayor Bill DeBlasio of New York City issued New York City Emergency Executive Order No. 100, which specifically stated that "the virus physically is causing property loss and damage."[13]

41.    Other governmental authorities and public health officials around the country have similarly acknowledged that the spread of COVID-19 causes direct physical loss and damage to property. For example:

     a.    The State of Colorado issued a public health order indicating that "COVID-19 … **physically contributes to property loss, contamination, and damage**…" (Emphasis added);

     b.    Broward County, Florida issued an emergency order acknowledging that COVID-19 "**is physically causing property damage**." (Emphasis added);

     c.    The State of Washington issued a stay-at-home proclamation stating the "COVID-19 pandemic and its progression … remains a public disaster affecting life, health, [and] **property**…" (Emphasis added);

     d.    The State of Indiana issued an executive order recognizing that COVID-19 has the "propensity to **physically impact surfaces and personal property**." (Emphasis added);

     e.    The City of New Orleans issued an order stating "there is reason to believe that COVID-19 may spread amongst the population by various means of exposure, including the propensity to attach to surfaces for prolonged period of time, thereby spreading from surface to person and **causing**

---

[13] City of New York, Emergency Executive Order No. 100 (March 16, 2020), available at https://www1.nyc.gov/assets/home/downloads/pdf/executive-orders/2020/eeo-100.pdf

**property loss and damage** in certain circumstances." (Emphasis added);

f.     The State of New Mexico issued a public health order acknowledging the "threat" COVID-19 "poses" to "**property**." (Emphasis added);

g.     North Carolina issued a statewide executive order in response to the COVID-19 pandemic not only "to assure adequate protection for lives," but also to "assure adequate protection of… **property**." (Emphasis added); and

h.     The City of Los Angeles issued an order in response to COVID-19 "because, among other reasons, the COVID-19 virus can spread easily from person to person and it is **physically causing property loss or damage** due to its tendency to attach to surfaces for prolonged periods of time." (Emphasis added).

42.     As these orders all recognize, the presence of people infected with or carrying COVID-19 particles in places, like Plaintiff's insured premises, where the business's operations require frequent person-to-person and person-to-surface interactions renders those places unsafe and unusable. The Closure Orders were issued in direct response to these existing dangerous physical conditions.

**IV.    Plaintiff's Losses Due to the COVID-19 Pandemic and Resulting Closure Orders.**

43.     GFS is considered a "non-essential business" pursuant to the Closure Orders.

44.     As a result of the Closure Orders, GFS was required to close its storefront and suspend its in-person workforce, thereby requiring it to cease its business operations completely.

45.     The Closure Orders prohibit the public from accessing Plaintiff's insured premises described in the Policy, thereby causing the necessary suspension of its operations and triggering the Business Income, Extra Expense, and Civil Authority coverages under the Policy.

46.     Moreover, the continuous presence of COVID-19 on or around Plaintiff's premises has damaged property by infecting it and has rendered the premises unsafe, uninhabitable, and unfit for their intended use.

47.     Upon information and belief, people carrying COVID-19 particles in, on, or about their person, have been physically present at or around Plaintiff's insured premises during the time the Policy was in effect.

48.     Upon information and belief, COVID-19 particles have been physically present at or around Plaintiff's insured premises—both airborne and on surfaces and items of property at or around Plaintiff's premises—during the time the Policy was in effect and remained physically present for up to 28 days.

49.     Plaintiff has sustained direct physical loss and damage to items of property located at its premises and direct physical loss and damage to its premises described in the Policy as a result of the presence of COVID-19 particles and/or the COVID-19 pandemic. The presence of COVID-19 caused direct physical loss of and/or damage to the premises insured under the Policy by, among other things, damaging the property, denying access to the property, preventing customers from physically occupying the property, causing the property to be physically uninhabitable by customers, causing its function to be nearly eliminated or destroyed, and/or causing a suspension of business operations on the premises.

50.     Plaintiff has incurred substantial Business Income losses and Extra Expense caused by: (i) the presence of COVID-19 at or around Plaintiff's insured premises, and (ii) the Closure Orders which prohibit access to Plaintiff's insured premises or the sale of Plaintiff's products and services.

**V.     Erie's Denial of Plaintiff's Claim for Coverage.**

51.     Following the March 20, 2020 Closure Order, Plaintiff, like countless other New York businesses, submitted a timely insurance claim to Erie requesting coverage for its business interruption losses and extra expenses promised under the Policy.

52.     On April 15, 2020, Erie denied Plaintiff's claim in writing. (*See* April 15, 2020 Denial Letter, attached hereto as Exhibit D.)

53.     Upon information and belief, Erie has uniformly refused to provide Business Income, Extra Expense, and Civil Authority coverage to most, if not all, New York businesses that have claimed business interruption losses and/or extra expense under the Ultraflex Property Coverage Form as a result of COVID-19 and the Closure Orders, as described below.

54.     Defendant categorically issued its denials without first conducting a meaningful coverage investigation. For example, in rejecting Plaintiff's claim for Civil Authority coverage, Defendant categorically stated that the coverage did not apply "because a Civil Authority did not order that the business be closed due to damage to property within one mile of the premises…," notwithstanding the fact that Plaintiff's Policy contained an endorsement to its Civil Authority coverage which, among other things, deletes the "one mile" limitation provided in the Ultraflex Property Coverage Form. A copy of that endorsement, which is also listed in the Policy's "Schedule of Forms" as Form No. ULQB, "Income Protection – Actual Loss Sustained," is attached hereto as Exhibit E.

55.     Moreover, Defendant's assertion ignores the coverage provided under the Policy's "Civil Authority" provision for losses incurred due to governmental actions "taken in response to dangerous physical conditions," even if the damage that caused those dangerous physical conditions occurred to property other than property at the insured premises. Upon information and belief, Defendant uniformly included this statement in denying other policyholders' claims for Civil Authority coverage without investigating the claim or reviewing the particular policy.

56.     Defendant also provided no basis for denying Plaintiff's claim for Business Income coverage, except a vague, general recitation of the Policy, that is, that "there was no

partial or total 'interruption of business' due to direct physical 'loss' or damage to Covered Property on the premises from a peril insured against." *See* Exhibit D. Upon information and belief, Defendant uniformly stated this conclusion to Plaintiff and other policyholders without undertaking any investigation into claims that COVID-19 and the resulting Closure Orders caused physical loss of and damage to the insured premises.

57.     Upon information and belief, Defendant also instructed insurance brokers to discourage policyholders from filing claims and promulgated the false conclusion that no coverage was available under the Ultraflex Property Coverage Form.

58.     Finally, unlike many commercial property policies available on the market, the "all-risk" Policy that Defendant sold to Plaintiff does not exclude loss caused by a virus. Thus, Plaintiff reasonably expected that the insurance it purchased from Defendant included coverage for property damage and business interruption losses caused by viruses like COVID-19.

59.     Defendant could have excluded pandemic-related losses under the Special Property Coverage Form or another endorsement to the Policy, as other insurers regularly do. The Insurance Services Office, Inc. ("ISO") frequently drafts form endorsements to clarify policy coverage in anticipated disputes, which insurers regularly incorporate into their policies. In 2006, the ISO drafted a new endorsement, CP 01 40 07 06, acknowledging that claims for business interruption losses would be filed under existing policy language for losses resulting from the presence of disease-causing agents. Endorsement CP 01 40 07 06, which other insurers have since incorporated in policies, provides that the insurer "will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." Defendant did not include any language to this effect in the Ultraflex Property Coverage Form, nor did it include this endorsement in the

Policy.

60.      Instead, Defendant waited until after it collected Plaintiff's premium, and after a

pandemic and the resulting Closure Orders caused catastrophic business losses to Plaintiff, to

attempt to limit its exposure on the back-end through its erroneous assertion that the presence of

COVID-19 is not a physical "loss" or damage and is therefore not a covered cause of loss under

its Policy.

61.      That the insurance industry has created and often uses specific exclusions for

pandemic-related losses under similar commercial property policies undermines Defendant's

claim that the presence of a virus, like COVID-19, did not cause physical "loss" or damage to

Plaintiff's premises. Indeed, if a virus could not result in physical "loss" or damage to property,

such specific exclusions for pandemic or virus-related losses would be unnecessary.

62.      Thus, Defendant's swift and wholesale denial of coverage is arbitrary,

unreasonable, and inconsistent with the facts and plain language of the Policy. Defendant's

denials appeared to be driven by Defendant's desire to reduce or extinguish its own financial

exposure to the economic fallout caused by the COVID-19 crisis, rather than its obligation to

initiate, as is its legal duty, a full and fair investigation of the claims and a careful review of the

Policy it sold to Plaintiff in exchange for a valuable premium.

## CLASS ALLEGATIONS

63.      **Class Definition:** Pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(1),

23(b)(2), and 23(b)(3), Plaintiff brings this action on behalf of itself and a class of similarly

situated individuals defined as follows:

> All persons and entities that: (1) have Business Income, Extra Expense, and/or Civil
> Authority coverage to insure property in New York under Erie Insurance Form No."FX-
> 0002 (Ed. 5/20)," Form No. "ULQB (Ed. 6/13)," or any other coverage form with
> identical language; (2) suffered Business Income and/or Extra Expense losses due to the

COVID-19 pandemic, (3) have made an insurance claim for their losses; and (4) have been denied coverage (the "Class").

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

64.     **Numerosity:** The exact number of members of the Class is unknown, but individual joinder in this case is impracticable. The Class likely consist of thousands if not hundreds of thousands of members. Members of the Class can be easily identified through Defendant's records.

65.     **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include but are not limited to the following:

      a.   Whether Erie Insurance issued all-risk insurance policies to Plaintiff and members of the Class in exchange for payment of premiums by Plaintiff and the Class members;

      b.   Whether Plaintiff and the Class suffered a covered loss based on the common policies issued to Plaintiff and members of the Class;

      c.   Whether Erie Insurance wrongfully denied all claims based on COVID-19;

d.   Whether COVID-19 causes "direct physical loss or damage" to property;

e.   Whether Erie Insurance's Business Income coverage applies to a suspension of business caused by COVID-19;

f.   Whether the Closure Orders constitute "action[s] of civil authority;"

g.   Whether Erie Insurance's Civil Authority coverage applies to a loss of Business Income caused by the Closure Orders requiring the suspension of business as a result of COVID-19;

h.   Whether Erie Insurance's Extra Expense coverage applies to efforts to minimize a loss caused by COVID-19;

i.   Whether Erie Insurance has breached its contracts of insurance through a blanket denial of all claims based on business interruption, income loss or closures related to COVID-19 and the Closure Orders; and

j.   Whether Plaintiff and the Class are entitled to an award of reasonable attorney fees, interest and costs.

66.   **Typicality:** Plaintiff's claims are typical of the claims of the other members of the Class in that Plaintiff and members of the Class purchased identical insurance coverage from Defendant containing identical language regarding Business Income losses and Extra Expense, their coverage claims for COVID-19 losses were denied by Defendant, and they have sustained damages arising out of Defendant's wrongful denials.

67.   **Adequate Representation:** Plaintiff have and will continue to fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex litigation and class actions. Plaintiff have no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and its counsel are

committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so. Neither Plaintiff nor its counsel have any interest adverse to those of the other members of the Class.

68.    **Inconsistent or Varying Adjudications and the Risk of Impediments to Other Class Members' Interests:** Plaintiff seek class-wide adjudication as to the interpretation, and resultant scope, of the Special Property Coverage Form. The prosecution of separate actions by individual members of the Class would create an immediate risk of inconsistent or varying adjudications on this issue, which would establish incompatible standards of conduct for Defendant in evaluating future claims. Moreover, the adjudications sought by Plaintiff could, as a practical matter, substantially impair or impede the ability of other Class members, who are not parties to this action, to protect their interests.

69.    **Declaratory and Injunctive Relief:** Defendant acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Class.

70.    **Superiority:** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be

fostered and uniformity of decisions will be ensured.

## FIRST CAUSE OF ACTION
### Declaratory Relief
### <u>(On behalf of Plaintiff and the Class)</u>

71.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

72.     Plaintiff's Policy, as well as those of other members of the Class, are insurance contracts under which Defendant was paid premiums in exchange for its promise to pay Plaintiff's and the Class's losses for claims covered by the Policy.

73.     Plaintiff and other members of the Class have complied with all applicable provisions of the Policy and/or those provisions have been waived by Erie Insurance, or Erie Insurance is estopped from asserting them.

74.     Defendant has arbitrarily and without justification refused to reimburse Plaintiff and members of the Class for any losses incurred by them in connection with the covered business losses and extra expenses related to the Closure Orders and the necessary interruption of their businesses stemming from COVID-19.

75.     Erie Insurance has denied claims related to COVID-19 on a uniform and class-wide basis, without individual bases or investigations, such that the Court can render declaratory judgment.

76.     An actual case or controversy exists regarding Plaintiff's and the Class's rights and Defendant's obligations under the Policy to reimburse Plaintiff and the Class for the full amount of losses incurred by Plaintiff and the Class in connection with the Closure Orders and the suspension of their businesses stemming from COVID-19.

77.     Pursuant to 28 U.S.C. § 2201, Plaintiff and the Class seek a declaratory judgement from this Court declaring the following:

a. Plaintiff's and the Class's losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under the Special Property Coverage Form;

b. Erie Insurance has waived any right it may have had to assert defenses to coverage or otherwise seek to bar or limit coverage for Plaintiff's and the Class's losses by issuing blanket coverage denials without conducting a claim investigation as required under New York law; and

c. Erie Insurance is obligated to pay Plaintiff and the Class for the full amount of the losses incurred and to be incurred in connection with the covered business losses related to the Closure Orders during the period of restoration and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

## SECOND CAUSE OF ACTION
### Breach of Contract
### (On behalf of Plaintiff and the Class)

78. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

79. Plaintiff's Policy, as well as those of other members of the Class, are insurance contracts under which Defendant was paid premiums in exchange for its promise to pay Plaintiff's and the Class's losses for claims covered by the Policy.

80. Plaintiff and the Class have complied with all applicable provisions of the Policy and/or those provisions have been waived by Erie Insurance, or Erie Insurance is estopped from asserting them, yet Defendant has abrogated its insurance coverage obligations pursuant to the Policy' clear and unambiguous terms.

81. By denying coverage for any business losses and extra expense incurred by Plaintiff and the Class in connection with the Closure Orders and the COVID-19 pandemic, Erie

Insurance has breached its coverage obligations under the Policy.

82.     As a result of Defendant's breaches of the policies, Plaintiff and the Class have sustained, and continue to sustain, substantial damages for which Defendant is liable, in an amount to be established at trial.

### THIRD CAUSE OF ACTION
### Deceptive Acts and Practices, New York's General Business Law (GBL) § 349.
### (On behalf of Plaintiff and the Class)

83.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

84.     Defendant operates its business providing insurance services throughout the State of New York, including to Plaintiff and members of the Class, and it furnishes to its policyholders standard policy forms to be purchased at large, therefore engaging in consumer-oriented conduct within the meaning of GBL § 349.

85.     The GBL § 349(a) makes it unlawful to engage in "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in" the State of New York.

86.     Section 349(h) provides a private right of action for any person injured by the deceptive acts or practices committed by a business and authorizes recovery of actual damages, including attorneys' fees, to a prevailing Plaintiff. A court can also impose treble damages based on a finding that the defendant's violation was knowing or willful. *See id.*

87.     Defendant's Ultraflex Property Coverage Form represents to policyholders that it is an "all-risk" policy and does not contain any exclusions for virus or pandemic-related events. The omission of any exclusion for virus or pandemic-related events in Plaintiff's all-risk Policy was likely to mislead a reasonable consumer in Plaintiff's circumstances into believing that the Policy covered losses related to virus or pandemic.

88.     Despite representing in the language of the Policy (and the omission of a virus or pandemic-related exclusion) that the Policy covered losses such as Plaintiff's claimed losses under the Business Income, Extra Expense, and Civil Authority provisions, Defendant immediately and categorically denied Plaintiff's claim for coverage under these provisions stemming from Plaintiff's losses related to the COVID-19 pandemic.

89.     Defendant's conduct in denying Plaintiff's—and, upon information and belief, the Class's—claims also constitutes "unfair claims settlement practices" under New York Insurance Law § 2601, which likewise constitutes a deceptive practice under GBL § 349.

90.     Defendant's immediate coverage denials to Plaintiff's claim was part of its general practice to deny any claims for losses related to COVID-19, without reference to the facts underlying the claim or the specific policy language at issue, and was aimed at all policyholders in the general public.

91.     By categorically denying these claims related to COVID-19, including Plaintiff's, without investigating or referring to the particular facts or the specific policy language (and in Plaintiff's case, without even referencing the correct policy language), Defendant "knowingly misrepresented to claimants pertinent facts or policy provisions relating to coverages at issue," "fail[ed] to adopt and implement reasonable standards for the prompt investigation of claims arising under its policies" and failed to "attempt in good faith to effectuate prompt, fair and equitable settlements of claims submitted in which liability has become reasonably clear[.]" *See* § 2601(a)(1), (3), (4).

92.     The deceptive practices described above were committed by Defendant knowingly and willfully in order to protect Defendant's financial interests in the wake of unanticipated insurance claims related to the COVID-19 pandemic.

93.     As a consequence of Defendant's actions, Plaintiff and members of the Class suffered an ascertainable loss of coverage benefits that they reasonably believed were provided to them when they purchased Defendant's Policy, in an amount to be established at trial, as well as treble damages for willful violations of GBL § 349, and reasonable attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the other Class members, respectfully request that the Court:

1.     Enter an order certifying the proposed Class, as defined above, designating Plaintiff as representative of the Class, and appointing Plaintiff's undersigned attorneys as Class Counsel;

2.     Enter a declaratory judgement in favor of Plaintiff and the Class and against Defendant, declaring as follows:

   a.   Plaintiff's and the Class members' losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under the Policy;

   b.   Erie Insurance has waived any right it may have had to assert defenses to coverage or otherwise seek to bar or limit coverage for Plaintiff's and the Class members' losses by issuing blanket coverage denials without conducting a claim investigation as required under New York law; and

   c.   Erie Insurance is obligated to pay Plaintiff and the Class for the full amount of the losses incurred and to be incurred in connection with the covered business losses related to the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

3.      Enter a judgement on the Second Cause of Action in favor of Plaintiff and the Class and against Defendant and award damages for breach of contract in an amount to be established at trial;

4.      Enter a judgement on the Third Cause of Action in favor of Plaintiff and the Class and against Defendant for deceptive acts and practices in violation of New York's General Business Law § 349 and granting actual damages and treble damages should the Court find that Defendant's actions were willful.

5.      Award to Plaintiff reasonable litigation expenses and attorneys' fees;

6.      Award to Plaintiff and the Class pre- and post- judgment interest, to the extent allowable; and

7.      Award to Plaintiff such other and further relief as may be just and proper.

Respectfully submitted,

**GENEVA FOREIGN & SPORTS, INC., individually and on behalf of all others similarly situated,**

Dated: April 28, 2020                    By: /s/  Benjamin H. Richman
                                                          *One of Plaintiff's Attorneys*

Jay Edelson*
jedelson@edelson.com
Benjamin H. Richman*
brichman@edelson.com
Theo Benjamin*
tbenjamin@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Lily Hough*
lhough@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9435

*Pro hac vice* admission to be sought