# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GENEVA FOREIGN & SPORTS, INC., individually and on behalf of all others similarly situated, : : : : : Plaintiffs, : : v. : : ERIE INSURANCE COMPANY OF NEW : YORK; ERIE INSURANCE COMPANY; : and ERIE INDEMNITY COMPANY d/b/a : Erie Insurance Exchange, : : Defendants. : | Case No. 1:20-cv-93 |

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

## PRELMINARY STATEMENT

A pandemic cannot alter the explicit terms of a contract or fabricate coverage where none exists. Plaintiff's Complaint seeks insurance coverage for alleged financial losses stemming from the Covid-19 pandemic, but fails to state a plausible claim for coverage under Plaintiff's insurance policy with Erie (the "Policy"). Like most policies providing business interruption coverage, coverage under the Policy is triggered only by *physical* damage to property. Plaintiff's property was never physically damaged. Plaintiff admits that its business was supposedly closed due to governmental orders designed to prevent the person-to-person spread of the Coronavirus, not because of any physical property damage. As courts have held and the public information confirms, the Coronavirus damages people, not property. Put simply, the government shutdown orders issued during the Covid-19 pandemic do not trigger business interruption coverage, rendering each of Plaintiff's claims facially inadequate.

Significantly, Plaintiff's theory is that it sustained a covered loss because Governor Andrew Cuomo's Executive Orders allegedly required Plaintiff to "cease its business operations completely." Complaint ¶ 44; *see also id*. at ¶ 1 (the "executive orders … have brought [Plaintiff's] business to a standstill"). Never mind that Plaintiff's business was deemed "essential" and allowed to remain open for business. This admission as to the *cause* of Plaintiff's alleged loss—the Executive Orders and not any direct physical damage to property—dooms Plaintiff's claims.

While admitting the direct causal link between the Executive Orders and the supposed closure of Plaintiff's automotive business, Plaintiff also apparently recognizes the need (under the plain terms of the Policy and New York law) to plead actual direct physical property damage to trigger coverage. So, Plaintiff speculates that "the continuous presence of COVID-19 *on or around* Plaintiff's premises has damaged property by infecting it and has rendered the premises unsafe, uninhabitable, and unfit for their intended purpose." *Id*. ¶ 46 (emphasis added). Plaintiff seemingly admits the utter conjecture undergirding this claim ("*on or around*") and guesses further still by surmising that its business losses were the "result of the presence of COVID-19 particles *and/or* the COVID-19 pandemic." *Id*. ¶ 49 (emphasis added).

Putting aside that Plaintiff's wavering allegations reveal it has no *factual* basis to plead that the Coronavirus was on its premises, this theory (that the Coronavirus on its premises caused its alleged shutdown) directly conflicts with Plaintiff's central pleaded theory that the "recent executive orders … have brought [Plaintiff's] business to a standstill." *Id*. ¶ 1. No matter, as courts (including in New York) have already held—and as is obvious given the nature of any virus—the Coronavirus harms people and does not damage property. For that reason, even if Plaintiff's guess that the Coronavirus was present on the insured premises was taken as true, it would be insufficient to trigger coverage. As a result, there is simply no coverage under the

"Additional Income Protection Coverage" or "Extra Expense" provisions of the Policy (Coverage 3, Sections A and B, respectively). Exh. 1 at EIE-Geneva 0025 – EIE-Geneva 0026, EIE-Geneva 0061.

Nor is there coverage under the "Civil Authority" coverage under the Policy (Coverage 3, Section C). *Id.* at EIE-Geneva 0026, EIE-Geneva 0061. Civil-authority coverage under the Policy and governing law requires direct physical damage to property *other than* Plaintiff's property (but near to it), such that the damage to the nearby property causes a civil authority to prohibit all access to Plaintiff's business. *Id.* This coverage is intended to cover the scenario where, for example, there is a fire or construction accident at a nearby property that causes the government to literally and physically cut off access to the insured premises. The Complaint does not even allege—nor could it—any damage to nearby property, let alone damage that resulted in a civil authority denying access to the insured premises. Plaintiff's effort to shoehorn its supposed closure into civil authority coverage is like jamming a square peg into a round hole.

Two last points. *One*, in the event this Court does not dismiss the entire Complaint, Plaintiff sued three Erie companies but only one, Erie Insurance Company, issued the Policy and hence the other two Erie companies should be dismissed. *Two*, the declaratory judgment claim is entirely duplicative of the breach of contract claim and under settled law ought to be dismissed.

## STATEMENT OF FACTS

Plaintiff Geneva Foreign & Sports, Inc. is a New York corporation that operates a car service and sales center on its premises (the "Premises"). Compl. ¶ 1. Since June 14, 2019, Erie Insurance Company has insured the buildings located on the Premises. *Id.* ¶¶ 14, 16; Exh. 1 at EIE-Geneva 0002 – EIE-Geneva 0008. According to the Complaint, Governor Cuomo issued a

3

series of Executive Orders in response to the pandemic that "require[ed] [Plaintiff] … to cease its business operations completely." Compl. ¶ 44 and Exhs. A-B.

Plaintiff submitted a claim under the Policy for coverage of lost income and expenses incurred as a result of the Executive Orders. *Id.* ¶¶ 50-51. Erie denied Plaintiff's claim on April 15, 2020. *Id.* ¶ 52 & Exh. D. More specifically, it denied Plaintiff's claim for business interruption coverage, which included Income Protection and Extra Expense coverage, because "there was no partial or total 'interruption of business' due to direct physical 'loss' or damage to Covered Property on the premises from a peril insured against." Compl., Exh. D at 2-3. Erie likewise denied Plaintiff's claim for Civil Authority coverage because "a Civil Authority did not order that the business be closed due to damage to property within one mile of the premises described in the 'Declarations,' caused by a peril insured against." *Id*. This suit followed.

## RELEVANT POLICY PROVISIONS

Attached as Exhibit 1 is a certified copy of Plaintiff's Policy referenced in the Complaint.[1] The Policy begins by laying out the basic "Insuring Agreement":

**SECTION I—COVERAGES**

**INSURING AGREEMENT**

We will pay for *direct physical "loss" of or damage to* Covered Property at the premises described in the "Declarations" caused by or resulting from a peril insured against.

*See* Exh. 1 at EIE-Geneva 0023 (emphasis added). The Insuring Agreement thus makes clear that there must be a *direct physical* loss or *direct physical* damage for any coverage to apply. Moreover, the Insuring Agreement is equally clear that coverage is limited to the "peril" identified

---

[1] Plaintiff did not attach a complete copy of the Policy to its Complaint. A complete copy is attached to the Defendants' Motion to Dismiss, which can be considered by this Court because Plaintiff's claims explicitly rely upon it. *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

4

in the Policy.  The three specific coverages at issue—Income Protection, Extra Expense, and Civil Authority coverage—are contained in "Coverage 3" of the Policy, *id.* at EIE-Geneva 0025 - EIE-Geneva 0026, EIE-Geneva 0061, and **INCOME PROTECTION – ACTUAL LOSS SUSTAINED** endorsement, (Compl., Exh. E).  The Policy lists the express "**PERILS INSURED AGAINST**" for Coverage 3 ("Perils Clause"):

> **ADDITIONAL INCOME PROTECTION – COVERAGE 3**
>
> **Covered Cause of Loss**
>
> This Policy insures against *direct physical* "loss", except "loss" as excluded or limited in this policy.

*See* Exh. 1 at EIE-Geneva 0027 (emphasis added).  Hence, like the Insuring Agreement, the Perils Clause requires a *direct physical loss*.

The Policy's specific Income Protection, Extra Expense, and Civil Authority coverages, all of which are subject to the basic Insuring Agreement and Perils Clause, are in pertinent part as follows:

> This endorsement modifies insurance provided under the following:
>
> **COMMERCIAL PROPERTY COVERAGE PART**
>
> I.   Paragraph **A. Additional Income Protection Coverage** of **Section I – Additional Income Protection – Coverage 3** is replaced by the following:
>
> **INCOME PROTECTION – ACTUAL LOSS SUSTAINED – COVERAGE 3**
>
> A.   **Income Protection Coverage**
>
> Income Protection means loss of "income" you sustain due to "interruption of business" *resulting directly from "loss" or damage to property on the premises* described in the "Declarations" *from an insured peril*.
>
> B.   **Extra Expense Coverage**
>
> "Extra expense" coverage is provided at the premises described in the "Declarations".

5

> "Extra expense" means necessary expenses you incur due to partial or total "interruption of business" *resulting directly from "loss" or damage to property on the premises* described in the "Declarations" *from a peril insured against*.

**C.  Additional Coverages**

    1.  **Civil Authority**

> When a peril insured against causes *damage to property other than property at the premises described in the "Declarations",* we will pay for the actual loss of "income" or "rental income" you sustain and necessary "extra expense" caused by action of civil authority *that prohibits access to the premises* described in the "Declarations" provided that both of the following apply:
>
> a.  *Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage,* and the premises described in the "Declarations" are within that area of the damaged property; and
>
> b.  *The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the peril insured against that caused the damage,* or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

*See* Exh. 1 at EIE-Geneva 0025 - EIE-Geneva 0026, EIE-Geneva 0061 (emphasis added); Compl. Exh. E.

## ARGUMENT

**I.  INTRODUCTION**

Fed. R. Civ. P. 12(b)(6) requires dismissal of any complaint that fails to allege a plausible and legally cognizable claim. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Iqbal*, 556 U.S. at 678.

A complaint "that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

New York law places the burden on the insured to prove that its insurance policy covers the loss for which it seeks coverage.[2] *See Morgan Stanley Grp., Inc. v. New England Ins. Co.*, 225 F.3d 270, 276 (2d Cir. 2000); *Roundabout Theatre Co., Inc. v. Cont'l Cas. Co.*, 302 A.D.2d 1, 6 (1st Dep't 2002) (noting "the well-established principle that a policyholder bears the initial burden of showing that the insurance contract covers the loss"). An insured is not relieved of this initial burden by the fact that the insurance policy at issue is a purported "all-risks" policy. *See Roundabout Theatre*, 302 A.D.2d at 6.

Plaintiff's claims should be dismissed as a matter of law because the Policy insures losses stemming only from *direct physical damage* to property. New York law confirms that Policies like Erie's extend coverage only where there is direct physical damage to the insured's premises (or, in the case of civil authority coverage, physical damage to a nearby property). Indeed, as explained below, a federal court in New York recently ruled, in denying an application for an injunction against another carrier in identical circumstances, that there was no coverage because the Coronavirus does not harm property and New York law requires a physical loss or damage to the insured premises that causes the business interruption in order for coverage to exist. And (also

---

[2] This Court should apply New York law pursuant to Pennsylvania's choice-of-law rules, as New York's interests in the parties' dispute and the outcome thereof are the most substantial. *See Complaint of Bankers Trust Co.*, 752 F.2d 874, 881-82 (3d Cir. 1984) ( citing *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 22, 203 A.2d 796, 805-06 (1964)); *Compagnie des Bauxites de Guinee v. Argonaut-Midwest Ins. Co.*, 880 F.2d 685, 688-89 (3d Cir. 1989). New York is the location of the insured risk, which is the most important factor in the choice-of-law analysis. *See* Restatement (Second) of Conflict of Laws § 193 & cmt. b; *Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 173 (3d Cir. 2011). New York's substantial interests are demonstrated by the facts that Plaintiff purchased the Policy in New York, the Policy was issued to a New York entity that conducts business entirely in New York, and the Policy covers property exclusively located in New York. *See* Restatement (Second) of Conflicts of Laws § 188. Compl. ¶¶ 1, 5; Exh. 1 at EIE-Geneva 004 – Geneva 006.

as explained below), a court in Michigan even more recently ruled in another Covid-19 business interruption insurance case that the insured's argument that "physical loss" can be demonstrated where mere access to the premises was foreclosed by an executive order "is just simply nonsense." There is nothing distinguishable about those cases. Here, Plaintiff's losses, as alleged, are purely economic—it was forced, it says, to close its business because of the Executive Orders. Because no *direct physical* loss occurred, there is no coverage and the Complaint should be dismissed with prejudice.

**II.    PLAINTIFF'S COMPLAINT FAILS TO PLAUSIBLY ALLEGE THE DIRECT PHYSICAL LOSS OR DAMAGE NECESSARY TO STATE A CLAIM FOR BUSINESS-INCOME OR EXTRA-EXPENSE COVERAGE**

Plaintiff's Complaint fails to state a viable claim for Business Income or Extra Expense coverage because it contains no plausible allegation that the Coronavirus—or the Executive Orders designed to contain the human-to-human transmission of the virus—caused any physical damage to the Premises. Under the Policy's Insuring Agreement, Erie need only "pay for *direct physical "loss" of or damage to* Covered Property at the premises described in the 'Declarations' caused by or resulting *from a peril insured against*." *See* Exh. 1 at EIE-Geneva 0023 (emphasis added). Under the Perils Clause, in turn, a "peril insured against" means "*direct physical 'loss'* unless the loss is excluded or limited." *Id.* at EIE-Geneva 0027 (emphasis added). Read together as they must be, these policy definitions and terms emphasize a threshold requirement for direct, physical damage to property at the insured premises. Plaintiff fails to plead any facts describing any direct physical loss or damage to the property and hence the Complaint fails to state a claim.

*Roundabout Theatre Co. v. Cont'l Cas. Co.,* is the leading New York case on this issue, and is on all fours with the case at bar. 302 A.D.2d 1 (N.Y. App. 1st Dep't 2002). There, a theatre company was forced to cancel 35 performances of Cabaret following a scaffolding accident at a

nearby building, which led the New York City Building Department to close West 43rd Street, where plaintiff's theatre was located. The theatre "sustained only minor damage" from the scaffolding collapse, but "sustained substantial monetary losses" from lost ticket sales (among other things) once the street was closed. *Id*. at 3. The policy's "Insuring Agreement" provided— just like Policy here—that the insurer would pay losses where there was a "loss of, damage to, or destruction" of the premises. *Id.* Also, just like the Policy here, the Insuring Agreement was tied to the "perils insured against." *Id*. And, just like the Policy here, the "perils" were limited to "direct physical loss or damage to the property." *Id*.

The trial court issued judgment in favor of the insured, reasoning that a "loss of use" did not have to be accompanied by any physical damage to the property. *Id*. at 5. The appeals court reversed. Reading the Insuring Agreement and Perils clauses together, as bedrock principles of contract interpretation require, the appeals court held that "the only conclusion that can be drawn is that the *business interruption coverage is limited to losses involving physical damage to the insured's property*." *Id*. at 7 (emphasis added). In reaching this conclusion, the court relied not only on the plain terms of the insuring agreement and perils clause, but also on other provisions of the policy that referenced physical damage to the premises. Context counts. For example, a provision in the policy limited the measure of recovery to "such length of time as would be required with the exercise of due diligence and dispatch to rebuild, repair or replace such part of the property herein described as has been lost, damaged or destroyed." *Id*. at 7-8. The court held that this provision would be "meaningless" if coverage existed absent physical damage to the premises. *Id*. Significantly, the Erie Policy here has the *same clause*. *See* EIE-Geneva 0062; Compl., Exh. E at 3 ("Amount of Insurance" § D.1—"The time period required to rebuild, repair, or replace such part of the Building or Business Personal Property that has been damaged or destroyed as a direct

result of an insured peril"). The court ultimately held that the insured failed to prove a covered loss because it did not demonstrate physical damage to its property; the insured's loss of use of its property was insufficient to trigger coverage. *See Roundabout Theatre*, 302 A.D.2d at 6-8.

Following *Roundabout Theatre*, New York courts dismiss business interruption and extra expense claims where, as here, the insured suffered an economic loss to its business unaccompanied by direct physical damage to its property. *See, e.g., Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co.*, 17 F. Supp. 3d 323, 331 (S.D.N.Y. 2014) (no business interruption coverage under *Roundabout Theatre* where utility shut off power in anticipation of Superstorm Sandy, because the policy language "direct physical loss or damage" "requires some form of actual, physical damage to the insured premises to trigger loss of business income and extra expense coverage"); *Satispie, LLC v. Travelers Prop. Cas. Co. of Am.*,__ F.Supp.3d at __, 2020 WL 1445874 at 3 (W.D.N.Y. Mar. 25, 2020) (holding that "[u]nder New York law, the phrase 'risks of direct physical loss' has been interpreted to mean 'some form of actual, physical damage' to the insured property").[3]

---

[3] While Pennsylvania law does not apply, the law in Pennsylvania appears to be the same as New York law with respect to construing the phrase "direct physical loss or damage." *See e.g., Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 286-89 (S.D.N.Y. 2005) (applying Pennsylvania law) (holding that "direct physical loss or damage" does not encompass pure economic damage, and that, therefore, an insurance policy's business income provisions did not afford coverage for lost income sustained by a parking garage at the Philadelphia International Airport caused by the aviation shutdown subsequent to the 9/11 terrorist attacks). Indeed, it has long been the law of Pennsylvania that actual physical damage coming within the definition of the perils insured against is a threshold requirement for business interruption coverage. *See Cleland Simpson Co. v. Firemen's Ins. Co. of Newark*, 392 Pa. 67 (1958) (no business interruption or civil authority coverage where the Mayor of Scranton declared a state of emergency and shut down businesses to avoid a fire after a storm cut off the city's water supply, because no property was damaged and businesses were closed due to the *fear* of damage, and not *actual damage* necessary to trigger coverage).

Significantly, in *Social Life Magazine, Inc. v. Sentinel Ins. Co.*, No. 1:20-cv-03311-VEC (S.D. N.Y. 2020), the Southern District of New York denied a preliminary injunction after holding that the Coronavirus did not cause physical loss or damage to property, and therefore did not trigger the insurance policy's business interruption coverage. *See* Exh. 2. The district court cogently observed:

| | |
|---|---|
| THE COURT: | Let me ask you something. First off, I want to start with basics. Do you agree that New York law applies? |
| MR. FISCHBARG: | Yes. |
| THE COURT: | All right. So – is it the Roundabout Theatre case? |
| MS. GORDON: | Yes, your Honor. |
| THE COURT: | First Department case? |
| MS. GORDON: | Yes, your Honor. This is Ms. Gordon on behalf of Sentinel. |
| THE COURT: | Thank you. Mr. Fischbarg, it would seem to me that the Roundabout case is a real problem for your position. Would you like to explain to me why it doesn't preclude your claim? |
| MR. FISCHBARG: | Yes. That case applies to off-site property damage rendering the premises at issue inaccessible. So in this case, you don't have off-site property damage. You have on-site property damage. |
| THE COURT: | What is the damage? There is no damage to your property. |
| MR. FISCHBARG: | Well, the virus exists everywhere. |
| THE COURT: | It damages lungs. It doesn't damage printing presses. |

***

| | |
|---|---|
| MR. FISCHBARG: | Mold spores, bacteria, virus, all those are physical items which damage whatever they are on, whatever they land on. And in this case, the virus, when it lands on something and you touch it, you could die from it. So – |
| THE COURT: | That damages you. It doesn't damage property. |

11

*See id*. at 4-6.[4]  Following that exchange, the district court held:

> I feel bad for your client.  I feel bad for every small business that is having difficulties during this period of time.  *But New York law is clear that this kind of business interruption needs some damage to the property to prohibit you from going*.  You get an A for effort, you get a gold star for creativity, but this is just not what's covered under these insurance policies.
>
> So I will have a more complete order later, but your motion for preliminary injunction is going to be denied.

*See id*. at 15 (emphasis added).[5]  Seeing the writing on the wall, Plaintiff dismissed the case before the Order was issued.

Finally, while not applying New York law, the only other decision to date to consider business interruption insurance in the context of the Covid-19 pandemic has, like *Social Life*, ruled in favor of the insurer.  In *Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, No. 20-258-CB (Michigan Cir. Court., July 1, 2020), the court held that an insured's losses stemming from Michigan's executive orders were not covered where "direct physical loss of or damage to property" was (just like here) a prerequisite for lost income and extra expense coverage.  Exh. 3.  The court held that

---

[4] Federal courts may take judicial notice of "proceedings in other courts of record." *Walburn v. Lockheed Martin Corp*., 431 F.3d 966, 972 n. 5 (6th Cir. 2005).  *See also Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp., Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999).

[5] Numerous courts have held—just as in *Social Life Magazine*—that invisible substances that harm people or can be cleaned off surfaces do not cause physical injury.  *See, e.g., Mama Jo's, Inc. v. Sparta Ins. Co.*, 2018 WL 3412974 at 8-10 (S.D. Fla. June 11, 2018) (holding that construction dust, including the need to clean construction dust from insured property, did not cause direct physical loss or damage to the insured's property; "cleaning is not considered direct physical loss"); *Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x. 569 (6th Cir. 2012) (requirement of "direct physical loss or damage" not met where presence of bacteria in air conditioning system did not cause tangible damage to insured premises"); *Mastellone v. Lightning Rod Mut. Ins. Co.*, 884 N.E.2d 1130 (Ohio Ct. App. 2008) (holding that the insurance policy's requirement of "physical injury" required harm to the insured house that "adversely affect[ed] the structural integrity of the house" and that, therefore, the insurance policy did not afford coverage for mold staining that did not affect the structure of house).

the phrase "direct physical loss of or damage to property" required "something with material existence. Something that is tangible. Something … that alters the physical integrity of the property." *Id*. at 18-19; *see also id*. at 19 ("the loss or damage must be physical"). The court held that the Coronavirus did not cause physical damage to the insured's property, and, therefore, did not cause the "direct physical loss of or damage to property" that was necessary to trigger coverage. *See id*. at 18-20, 23.

Moreover, the insured argued, just as Plaintiff does here, that it suffered a physical loss of use because customers could not (by dint of executive orders) enter the business premises (the same argument rejected in *Roundabout Theatre*). *Id*. at 20. The court rejected that argument as "simply nonsense" because "it comes nowhere close to meeting the requirement that … there has to be some physical alteration to or physical damage or tangible damage to the integrity of the building." *Id*. The court thus dismissed the case, with prejudice and without leave to amend. *Id*. at 22-23.

The same common-sense reality prevails here. As in the cases described above, the Insuring Agreement and Perils Clause require—both by their own terms and as those clauses have been interpreted by New York (and many other) courts—*direct physical damage* to property. The Coronavirus may damage people, but it cannot damage a car or a wrench.[6] The virus needs a

---

[6] The Centers for Disease Control ("CDC") has made clear that the Coronavirus can be wiped off surfaces by simple cleaning using easily available cleaning products, such as Clorox or Lysol from your local grocery store. *See* CDC Reopening Guidance for Cleaning and Disinfecting (4/28/20), attached as Exh. 4; https://www.cdc.gov/coronavirus/2019-ncov/community/reopen-guidance.html (last accessed July 23, 2020). The Court may take judicial notice of these publicly available guidelines. *See Carmen R. v. Decker*, 2020 WL 2029337 at 10 (D. N.J. Apr. 28, 2020); *Black v. Columbus Pub. Sch.*, 2007 WL 2713873 (S.D. Ohio Sept. 17, 2007). Such notice does not covert this motion into one for summary judgment. *See Reeves v. PharmaJet, Inc.*, 846 F. Supp. 2d 791, 794 n.5 (N.D. Ohio 2012).

person in order to cause any damage at all. And this Policy covers direct physical damage *to property*, *not people*. In any event, Plaintiff admits that its damages were caused by the Executive Orders which allegedly shuttered its business, Compl. ¶¶ 1, 44, which is not a direct physical injury, but an economic loss caused by the government's effort to avoid the person-to-person spread of the virus. That does not trigger coverage. *See Newman Myers*, 17 F. Supp. 2d at 331 (S.D.N.Y. 2014) (direct physical loss or damage requires "actual, demonstrable harm of some form to the premises itself, *rather than forced closure of the premises for reasons exogenous to the premises themselves, or the adverse business consequences that flow from such closure*") (emphasis added). Because direct physical loss of or damage to property on the Premises is a prerequisite to coverage, Plaintiff has failed to state a plausible claim that Erie breached the Policy by denying Plaintiff's claim under these coverages.

### III.   PLAINTIFF'S COMPLAINT FAILS TO PLAUSIBLY ALLEGE COVERAGE UNDER THE POLICY'S CIVIL AUTHORITY PROVISION

Plaintiff fails to state a claim that Erie breached the Policy by denying its claim for coverage under the Policy's Civil Authority coverage. That coverage unambiguously requires that:

1. A peril insured against caused direct physical loss of or damage to property other than property on the Premises;

2. A civil authority took action to prohibit access to the area immediately surrounding the damaged property as a result of the damage;

3. The civil authority's action was taken in response to dangerous physical conditions resulting from the damaged property or the continuation of the peril insured against that caused the damage, or the action was taken to enable a civil authority unimpeded access to the damaged property;

14

    4.        The Premises is within the area immediately surrounding the damaged property to which the civil authority prohibited access; and

    5.        Plaintiff suffered a loss of income, rental income, or extra expenses caused by the action of a civil authority that prohibited access to the Premises.

*See* Exh. 1 at EIE-Geneva 0026, EIE-Geneva 0061. Plaintiff's Complaint fails to plead *any* of these elements, let alone all of them.

To begin with, the allegations in the Complaint do not satisfy the Civil Authority coverage's requirement of direct physical loss of or damage to property *other than* property on the Premises. Not only does Plaintiff fail to identify any other property (and certainly none that was damaged), but the only "damage" complained of is the supposed general presence of the Coronavirus in New York state, and that is not, as explained above, physical damage. Nor has Plaintiff alleged that any civil authority has taken action so as to have "unimpeded access" to physically damaged (but as of yet unidentified) nearby property.

Moreover, the Executive Orders upon which Plaintiff relies did not prohibit all access to the Premises, as is required to trigger Civil Authority coverage. *See 54th Street Ltd. Partners, L.P. v. Fidelity & Guar. Ins. Co.*, 306 A.D.2d 67 (1st Dept. 2003) (holding that, although a civil authority diverted vehicular and pedestrian traffic, the insurance policy's civil authority coverage was not triggered where the civil authority did not deny access to the restaurant).[7] While the

---

[7]*See also, S. Hosp., Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137, 1140-41 (10th Cir. 2004) (holding that no civil authority coverage existed where the civil authority did not prohibit access to hotel operations); *730 Bienville Partners Ltd. v. Assurance Co. of Am.*, 67 F. App'x. 248, *2-3 (5th Cir. 2003) (holding that FAA's grounding of all civilian aircraft in response to the 9/11 attacks did not prohibit access to hotels even though it may have reduced hotel capacity because it was not impossible for hotel guests to get to the hotel); *Schultz Furriers, Inc. v. Travelers Cas. Ins. Co. of Am.*, 2017 WL 1731005 at 4 (N.J. Super. Ct. 2007) (concluding that no civil authority coverage existed where access to the store was not "totally and completely prevented, *i.e.*, made impossible"); *Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, LLP v. Nat'l Fire Ins.*

Executive Orders required non-essential employers to "reduce [their] in-person workforce at any work locations by 100% no later than March 22 at 8 p.m.," Compl., Exh. A at penultimate bullet point, they did not proscribe the business owners, vendors, or delivery personnel, among others, from accessing the property. Access to the property was not, therefore, totally prohibited, let alone from a dangerous physical condition at a nearby property.

Significantly, Plaintiff's theory of liability stems from a faulty premise that is readily apparent on the face of the Executive Orders. The Executive Orders expressly exempted "[a]ny essential business or entity providing essential services or functions" from these in-person restrictions. *See* Compl. Exhs. A and B. Although Plaintiff alleges that it is a "non-essential business" pursuant to the Executive Orders, that is a legal conclusion, and an erroneous one. On March 20, 2020—*prior to the March 22 deadline to eliminate in-person workforces*—Governor Cuomo designated "auto repair" businesses (such as Plaintiff's) as "essential services," and thus "essential businesses" under the Executive Orders.[8] Plaintiff's allegation that it was forced to

---

*Co.*, 2007 WL 2489711 at 6 (M.D. La. Aug. 29, 2007) (concluding that no civil authority coverage existed where advisories did not prohibit access to insured premises); *Penton Media, Inc. v. Affiliated FM Ins. Co.*, 2005 WL 8171363 at 9 (N.D. Ohio Sept. 30, 2005), *aff'd* 245 F. App'x. 495 (6th Cir. 2007) (holding that the "ordinary meaning" of "civil authority coverage" "refers to the situation when a civil authority prohibits access to the insured's premises resulting in a total loss of business income"); *Philadelphia Parking Auth.*, 385 F.Supp.2d at 289-90 (holding that FAA's grounding of all civilian aircraft in response to the 9/11 attacks did not prohibit access to parking facilities).

[8]    *See* https://www.governor.ny.gov/news/governor-cuomo-issues-guidance-essential-services-under-new-york-state-pause-executive-order (last accessed July 23, 2020). The lengthy list of businesses that were allowed to remain open—including laundromats, grocery stores, convenience stores, and hardware stores, among many others—underscores that the virus does not cause property damage, let alone damage that caused businesses to close. These types of stores (Home Depot and Walmart, for example) operated in New York during the thick of the Pandemic. Those stores were not "unsafe, uninhabitable and unfit" (Compl. ¶ 14)—quite the contrary, they were never "physically damaged" and continued to operate, as did restaurants for take-out and delivery, supermarkets and many other "essential" businesses. "Non-essential" businesses forced to close did not suffer any "physical damage" either and also were not "unsafe, uninhabitable and

shutter its business not only misreads the Executive Orders but is patently false (as one can easily glean from Plaintiff's own Facebook posts). In any event, Plaintiff's claim that the Executive Orders deemed its business non-essential and shuttered it is a legal conclusion that need not and should not be accepted by the Court. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) ("[t]he District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions"). And, even if all access to the Premises *was* prohibited by the Executive Orders (though it clearly was not), it was not on account of any physical damage to nearby property, as would be necessary to trigger civil authority coverage. Plaintiff cannot squeeze his claim into the civil authority coverage in the Policy; it simply does not fit.

What's more, the law requires a *causal connection* between the alleged property damage on a nearby property and the civil authority's action, and is not satisfied where the civil authority acts not *in response to* property damage, but merely to *prevent* some future loss. *See United Airlines, Inc. v. Ins. Co.*, 385 F.Supp.2d 343, 353 (S.D.N.Y. 2005), *aff'd* 439 F.3d 128 (2d Cir. 2006) (holding that civil authority coverage did not exist where the decision to halt operations at Ronald Reagan Washington National Airport in response to the 9/11 attacks was a response to fears of future attacks, and not damage to insured property); *Cleland Simpson Co. v. Firemen's Ins. Co. of Newark*, 392 Pa. 67 (1958) (no civil authority coverage where the Mayor of Scranton declared a state of emergency and shut down businesses to avoid a fire after a storm cut off the city's water supply, because businesses were closed due to the fear of damage, and not actual damage necessary to trigger coverage).[9] Erie's Civil Authority coverage confirms this need for a

---

unfit." Instead, their businesses were simply deemed less important than essential businesses and were closed or limited to contain the person-to-person spread of the virus.

[9] *See also*, *Dickie Brennan & Co., Inc. v. Lexington Ins. Co.*, 636 F.3d 683, 686 (5th Cir. 2011) (holding that civil authority coverage must arise from a civil order "issued as a direct result of

17

causal nexus by stating that the action by the civil authority must be "*taken in response to dangerous physical conditions resulting from the damage or continuation of the peril insured against that caused the damage*" or to "enable a civil authority to have unimpeded access to the damaged property." Exh. 1 at EIE-Geneva 0026 (§ C.1.a.), EIE-Geneva 0061 (§ C.1.a.). However, the Executive Orders were on their face designed to prevent the "community contact transmissions of COVID-19." (Compl. Exhs. A and B at second "Whereas" clause). The Orders were not, plainly, issued in response to any physical damage but to prevent *future* person-to-person spread of the virus, which is far afield from the "peril" insured against and is not a "dangerous physical condition" in any event. On the four corners of the Policy, and settled law, Civil Authority coverage was not, and could not have been, triggered.

## IV. PLAINTIFF FAILS TO PLEAD A CLAIM UNDER NEW YORK'S GENERAL BUSINESS LAW § 349

Section 349 of the General Business Law prohibits deceptive acts and practices in the conduct of any business, trade, or commerce. NY Gen. Bus. § 349(a); *Small v. Lorillard Tobacco Co., Inc.*, 720 N.E.2d 892, 897 (N.Y. 1999); *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir.

---

physical damage" to other property, and that civil authority coverage, therefore, did not exist where a business was closed due to a hurricane evacuation order); *Syufy Enters. v. Home Ins. Co. of Ind.*, 1995 WL 129229 at 2 (N.D. Cal. Mar. 21, 1995) (holding that no civil authority coverage existed for business closure due to a city-wide curfew to prevent looting and rioting); *Kelaher Connell & Connor, P.C. v. Auto-Owners Ins. Co.*, 2020 WL 886120, at *7 (D. S.C. Feb. 24, 2020); *S. Tex. Med. Clinics, P.A. v. CNA Fin. Corp.*, 2008 U.S. Dist. LEXIS 11460, at *2 (S.D. Tex. Feb. 15, 2008) (no coverage where the order was issued due to a fear that a hurricane would strike nearby but not due to actual physical damage); *Assurance Co. of Am. V. BBB Serv. Co.,* 593 S.E.2d 7, 7-9 (Ga. Ct. App. 2003) (court noted that if the hurricane evacuation order was issued due to the threat of future injury and not because of any already existing physical loss or damage, plaintiff would be barred from recovery); *Bros., Inc. v. Liberty Mut. Fire Ins. Co*., 268 A.2d 611 (D.C. Ct. App. 1970) (court interpreted the "direct loss" requirement to mean there had to be "loss proximately resulting from physical damage to the property or contents caused by a riot or civil commotion").

2009). The plaintiff must demonstrate that it suffered actual harm as a result of the deceptive act or practice. *Small*, 720 N.E.2d at 897. This claim falls with Plaintiff's doomed coverage claims.

As the Policy unambiguously precludes Income Protection, Extra Expenses, and Civil Authority coverage for Plaintiff's losses, and Erie properly denied coverage based on express policy terms and settled law, Plaintiff's GBL § 349 claim necessarily fails and should also be dismissed. *See Spagnola*, 574 F.3d at 74*. See also Serpa v. Liberty Mut. Mid-Atlantic Ins. Co.*, 2018 NY Slip Op. 33438 (Sup. Ct. Queens Co. 2018) ("It necessarily follows that, because Liberty Mutual properly denied plaintiff's claim for [supplementary underinsured and uninsured motorist] coverage due to a lack of exhaustion, the second cause of action [under § 349] predicated upon fraud also fails") (a copy of this decision is attached hereto at Exh. 5).

## V. THE COMPLAINT SHOULD BE DISMISSED AGAINST ERIE INSURANCE COMPANY OF NEW YORK AND ERIE INDEMNITY COMPANY FOR THE ADDITIONAL REASON THAT THEY HAVE NO CONTRACT WITH PLAINTIFF

Plaintiff sued three insurance companies but the Policy was issued by only one of them—Erie Insurance Company. Exh. 1 at EIE-Geneva 0002. Plaintiff pleads no basis to impose liability on the two companies it had no dealings with; at a minimum, those two Defendants should be dismissed from this case. *See, e.g., SUS, Inc. v. St. Paul Travelers Grp.*, 75 A.D.3d 740, 742 (N.Y. Sup. Ct. App. Div. 2010) (dismissing claims against other Travelers defendants where "only Charter Oak, and none of the other Travelers defendants, issued the policy").

## VI. PLAINTIFF'S FIRST CAUSE OF ACTION SEEKING A DECLARATORY JUDGMENT SHOULD BE DISMISSED AS DUPLICATIVE OF ITS CLAIM FOR BREACH OF CONTRACT

Under New York law, "courts regularly dismiss [as duplicative] declaratory judgment claims in first-party insurance actions where a breach of contract is also alleged." *H&H Envtl. Sys. v. Evanston Ins. Co.*, 2019 U.S. Dist. LEXIS 39700, at *12-15 (W.D.N.Y. Mar. 12, 2019)

(collecting cases) ("Because the declaratory judgment claim is duplicative of the breach of contract claim, it serves no useful purpose and is dismissed"). Here, Plaintiff's declaratory judgment claim is entirely duplicative of its breach of contract claim, serves no purpose, and under settled law should be dismissed.

## CONCLUSION

For the foregoing reasons, Plaintiff's claims should be dismissed with prejudice.

Respectfully submitted,

  /s/ Paul K. Geer, Esquire
Paul K. Geer, Esquire
Pa. I.D. No. 27675

  /s/ Tara L. Maczuzak, Esquire
Tara L. Maczuzak, Esquire
Pa. I.D. No. 86709

  /s/ Jason H. Peck, Esquire
Jason H. Peck, Esquire
Pa. I.D. No. 308111

DiBella, Geer, McAllister & Best, P.C.
Firm No. 099
20 Stanwix Street, Eleventh Floor
Pittsburgh, PA 15222

(412) 261-2900
(412) 261-3222 (Fax)

pgeer@dgmblaw.com
tmaczuzak@dgmblaw.com
jpeck@dgmblaw.com

Adam J. Kaiser (pro hac vice pending)
ALSTON & BIRD, LLP
90 Park Ave,
New York, New York 10016
(212) 210-9465
adam.kaiser@alston.com

*Attorneys for Defendants*